Good morning. My name is Lynn Allen and I represent the appellant, American Family Mutual Insurance Company. I would like to reserve about five minutes for my rebuttal argument. The main issue in this case is whether the district court erred in finding that there was no evidence that the tender of defense letters were received by owners of National Fire, the appellees in this case. American Family contends that it presented sufficient evidence of mailing those two letters, which creates a genuine issue of fact for trial. As a preliminary matter, we have two basic arguments being made by the appellees in this case. The first, that there was an insufficient tender of the defense under the common law of the State of Arizona. The second argument being made is that there was a noncompliance with policy conditions requiring that notice be sent to the insurers. I'm not going to spend a lot of time on those issues, primarily because there's nothing in the record or in the law that would establish a different standard for tendering the defense under either of those theories. In other words, the contract just requires that notice be given of the suit, that the insured send a notice of the lawsuit, send is a word used in the policy. There's no requirement in the policy that notice be given in any particular form. Similarly, under the common law that requires an insured to tender the defense to the insurer, again, there is no specific requirement that notice be made in any particular way. American Family does not dispute that there must be some evidence that the insurance company received the tender letters. The issue in this case is whether American Family's evidence that the insured mailed the tender letters to the insurance companies was sufficient to avoid summary judgment being granted against American Family, and that's where I want to focus my argument. The appellees argue here and argued below that there has to be, quote, unquote, actual receipt of the tender. We don't have any dispute with that standard, but the problem we have with the arguments being made by the appellees is that they're not understanding that the mail delivery rule is an evidentiary tool for proving actual receipt, even where the addressee of the letter denies receipt. And I refer the Court to two Arizona cases that touch on that exact topic, the Lee v. State of Arizona case and Blake v. Edwards. So as we left the room, I was in the middle of a question. You're talking about what the district court did. My question was that the district court did not accept that way of looking at it, but simply found that you had not met your burden of showing sufficient facts to let you get to a trial on the issue of the mailbox rule. Isn't that what happened? Yes, that is what happened. And I did address the other issues solely because they were being brought up again in response by the appellees. But I'll focus on the evidence, which is why this appeal was filed. The district court improperly weighed the evidence. I can't be any more direct than that. This was a summary judgment motion. American Family presented the district court with an affidavit from the person who actually prepared the letters. Arizona Supreme Court cases have held that you don't even have to put the person on the stand who prepared the letters in order to present sufficient evidence of mailing. Evidence of a business routine is sufficient. But American Family went one step further. They presented the evidence from the person who actually prepared the letters for mailing. And I want to go through that evidence. Ms. Zanella's affidavit was attached to both statements of fact. Ms. Zanella testified as to the process. And this was her personal knowledge and her personal recollection, as she states in her affidavit. The attorney she worked for, Mr. Bedwell, drafted the letters that were to be sent to the various subcontractors. Ms. Zanella herself went to the certificates of insurance that listed all of the insurers for each subcontractor. And she says she does this as to all of them, which necessarily includes national fire and owner. She testified that she inserted SCCs on the letter, the various insurance companies for each subcontractor. And the two tender letters at issue here do show the one to Maldonado Masonry shows owners as a CC recipient. The letter to Central Valley shows national fire as a recipient. Ms. Zanella then goes on to state that she prepared a Word document with the addresses of all of the insurance companies. Right. I mean, remember the evidence of the record, I think, on that issue. What surprised me a bit, and maybe it's just not in the record here, is that there was just no follow-up on the tender. The law firm received responses from some of the other insurance companies. And normally you would expect some follow-up from the law firm saying, okay, we've tendered it, et cetera. But there's just no evidence of any subsequent communication. Is that the state of the record? That is the state of the record. But I would submit that that's not a fact that's material to. Here's the complaint. Here's this. Here's what's happening in the case. Nothing. Right? I mean, the record is just that all we have is her custom and practice testimony along with the Word document she worked from. Right? That and her testimony that she then made envelopes. Right. That the envelopes put them in to be mailed. I would submit that the evidence Your Honor has brought up, which is there was no subsequent follow-up, is not material to the issue of whether the letter was mailed in the first place. But if it is, basically it goes to that issue of fact that has to be decided by the trier of fact, which is we've presented, I believe, very strongly sufficient evidence that those two letters were mailed. There is a presumption of receipt under the mail delivery rule. I don't think anybody can argue with that. That's a Ninth Circuit rule as well. These two insurers have denied receipt of the letters. That creates an issue of fact for the jury to decide whether in fact those letters were received because there are alternate explanations to the fact that the letter wasn't mailed. It could have been received by the insurance company and misplaced. And essentially, they're required to come forward with evidence then of their mailroom practices, how letters get, you know, assigned to adjusters and things of that nature. And then that whole body of evidence, including the fact, Your Honor, that you brought up about there being no follow-up, the trier of fact gets to take all that evidence and make a determination of whether or not GFTDC gave notice of these lawsuits to the two carriers. And this is where we believe the district court erred in drawing conclusions from those facts, not giving American families the benefit of the inferences from the fact of nailing and simply concluding that there was insufficient evidence. There was evidence, and this was a summary judgment motion. And it should go to the trier of fact. Roberts. Okay. The other issue that we have in this case only relates to owners. And that is whether or not GFTDC was an additional insured on that policy. Judge Wake essentially found that American Family had not come forward with evidence on all of the elements of estoppel. And I'll address, you know, some other issues on rebuttal as appropriate. But I wanted to address first the crux of the ruling, which was American Family didn't come forward with evidence of the two elements of estoppel reliance and injury. American Family did attach the affidavit of George Tibshirany, who was the principal of GFTDC, to its statement of facts. Unfortunately, for a reason that escapes me, it had to be, you know, an issue with the clerical translation of getting the affidavit into the statement of facts. There weren't citations to those four paragraphs in the statement of facts. The owners had an opportunity to reply to that motion for summary judgment, did not raise at all any issue with the sufficiency of proof, citation to the record, and supporting those four statements of fact. If they had done so, American Family could have quite easily filed a notice of errata or a supplemental document pointing the district court to the specific exhibit and paragraphs in the Tibshirany affidavit. This did, in fact, come up during oral argument. The fact that those citations were not in the statement of facts, I argued that motion. I corrected the record immediately with Judge Wake. Judge Wake repeated back to me, and it's in the transcript, that he understood that Exhibit K supported those four facts. But then, despite having that information, Judge Wake disregarded those four paragraphs, citing the Local Rule 51 or 56.1b, that requires citation to the record in the statement of facts. We argued that this was an abuse of discretion on the part of Judge Wake, elevating a form over substance. It is clear that Judge Wake knew and, in fact, referenced in his ruling that Exhibit K, the Tibshirany affidavit, supported those four facts. Yet, inexplicably, the Court refused to consider those facts, which would have created a genuine issue of fact for trial on the Estoppel issue. Well, I'm wondering if it would. That is, this all – I get my initials wrong. GFTDC was not listed in the policy, right? That is correct. You're totally relying on the summary. What do you call it? Certificate of insurance. Yes. Right. And the question I have is, was it reasonable, assuming that this gentleman relied on it, was it reasonable, objectively reasonable to do so? Yes. It says you have to go look at the policy. Well, yes, it was reasonable for him to rely on it because it goes to the very fact of the policy itself. This is not one of those cases where an insured comes back, an additional insured comes back and says, I relied on the certificate of insurance that said you had a million dollars of liability coverage, but there's this exclusion you're trying to assert against me. And, you know, that's contrary to this representation of coverage. That's one thing. And we would tend to agree that a certificate of insurance is not going to operate as an Estoppel on things like exclusions. What we have here is a representation by the insurance company through its agent of the very fact of the policy itself and the identity of the insureds under that policy of insurance. And that certificate of insurance is issued as a representation that this policy exists with GFTDC as an additional insured. And that's the key difference between the situation we have at hand and other situations involving certificate of insurance where it might not be appropriate to rely on it without, you know, looking at the exclusions contained in the policy. This goes to the very fact of the policy itself, which is what a certificate of insurance is meant to represent to the recipient of that document. Roberts. Okay. I think we have your argument, Ann, and we'll give you some time to rebuttal. Thank you. Thank you for that. Good morning, Your Honors. My name is Kevin Barrett. I represent Appellee's National Fire Marine Insurance Company and Auto Owners Insurance Company. Excuse me, Owners Insurance Company, which goes by the trade name Auto Owners, so I may slip and out of habit refer to them. I would like to go ahead. No. I was going to say, do you mind starting with the estoppel argument first? Right. No. That argument applies only to auto owners as Ms. Allen indicated. Let me. I understand how, you know, Arizona law, it says you can't supplant this insurance policy with a certificate. And the certificate says, obviously, you have to rely on the policy. But why isn't there an argument on estoppel as to the existence of the policy when you issue a certificate? And bear with me for just a second, because certificates of insurance are issued for a particular purpose, and that is so you can show proof of insurance in a situation like this where you have contractors, subcontractors, and you want to show proof of insurance. So if you're not trying to vary the terms of the specific exclusions or amount of coverage or something, why doesn't that create at least a tribal issue effect on estoppel? Well, I think the key fact there is that the certificate of insurance evidences the insurance relationship between the named insured and the insurance company. That's what the certificate really represents. It says, hey, there's a policy between these two entities. Now, there's some additional statements that are made on the certificate with respect to who else is a certificate holder. Right. But that's not necessarily saying that there's a contract of insurance between the certificate holder and the insurer. And that's why there's very specific language on the certificate of insurance that says, hey, this doesn't change the terms of the policy. And one of those terms is whether or not you are named as an additional insured. As the Court has also sort of noted and asked, you know, I mean, generally speaking, that would just be an error. I mean, I don't think it was deliberate. I mean, my guess is it was just an error in typing up the insurance policy. Because in the – I mean, just again, we're – don't worry. I'm not going to depart too far from the facts of this case. But, I mean, in the real world of when contractors and subcontractors provide insurance in this context, that's exactly what they want. The owner wants additional insurance. The general contractor wants additional insurance. They require certificates of insurance. That is correct. And in many circumstances, although, you know, this goes beyond the record, but at least the general terms that you're asking about, certificates of insurance are most commonly issued with the actual endorsement attached. So there's a certificate, but then there's the actual endorsement that says, these are the terms of the additional insured coverage, and these are people who are named as an additional insured. And I think – and I don't want to digress too far from your question, but looking at the big picture, I think that's really one of the main reasons why no court would ever want to randomly decide, based on the certificate, that the insurance relationship exists, because it has no terms. It's all well and good to say, well, we think that there may be – you may be an additional insured, but what's the coverage that's being provided? There are a variety of additional insured forms out there. Some provide more coverage or less coverage than others. I believe I heard Ms. Allen argue that she wasn't specifically saying that the certificate would override the coverages or exclusions that were provided, but they're trying to argue that only in this limited circumstance it's allowed to prove and create maybe an insurance relationship in general. I would submit to the Court that there's a real problem there, because let's say, for example, that the Court finds that this additional insured coverage exists and that Mr. – that GDTFC is entitled to it. What is the scope of that coverage? I would submit to this Court, and I think you can take judicial notice of it, that this case, the underlying case, continued with multiple insurers, including National Fire and Marine. And the judge ultimately determined, and it's already up on appeal to this Court, that the additional insured coverage didn't apply. It was excess. Based on the terms of the specific additional insured endorsement, that was added to the policy. Adding excess and didn't apply are two different things. I'm just asking for clarification. Was the holding that it was excess insurance to the primary? Yes. Or that it didn't affect – it didn't exist at all? The holding was that under the specific terms of the additional insured endorsement on the policies, the policy was excess to the underlying coverage and not reached. And therefore, summary judgment was granted on the – Because you didn't get far enough to get into the excess. Right. But my point is, is that how, if we go back down, is auto owners supposed to talk about the scope of coverage that's provided? No, I think the simple answer is that it's a genuine issue of material fact. You send it back down. It may end up in the same result, that even if their coverage is found, it may be excess coverage. Well, I'm just playing it out a bit. But the only issue before us today is, is there – and I appreciate your broader picture because that's the kind of approach I was taking. But it seems to me that once we go back to what's in front of us, the question is, is there a tribal issue of fact on estoppel? Right. And I can – I was going to deal with the estoppel argument last, but if I may wrap up on it very quickly and then I'll get to the main arguments or the early arguments about the mailbox rule. Estoppel requires three things. And the Court's already identified that it requires sort of reasonable or justifiable reliance. Arizona courts have already held as a matter of law that these certificates don't confer any rights. And they say on their face, don't rely on this. That's, in essence, in giant capital letters. But what's it for? It's to tell you that this policy exists and if you want to know what it is, come ask us. Right. See, that's the problem. You know, the policy exists. I mean, that's why it may be different. I'm not saying it is. That's the best argument. Right. But I would also submit then a side – is that there has to be a detriment. There has to be some sort of detrimental reliance to the certificate holder. That's the second part of it. So what's your view of the evidence on detrimental reliance? There is no evidence of detrimental reliance, even if the Court reverses – if this Court reverses Judge Wake's discretionary decision to exclude the declaration. The declaration simply says, I wouldn't have let him work without this certificate. It certainly doesn't say, I was harmed by it at all. And I believe in an American family's reply brief, their answer was, well, it's just self-evident that he was damaged. There's no evidence in the record that he was damaged at all. The fact is, is that American family provided him a complete defense and completely indemnified him in the underlying case. He was not harmed one bit by not having this additional insured coverage by one of 60 carriers. There's no evidence in the record at all of harm. Without this evidence of harm, the estoppel argument fails as a matter of law. Why is it insufficient to say, just as he did in the affidavit, that I wouldn't have let work go forward without the certificate and I'm harmed because I have – I didn't get the insurance I thought I bargained for? Well, you would have to – The fact that somebody else provided insurance in defense is somewhat irrelevant to that, isn't it? And under theory of equitable contribution and all that. I don't think it's irrelevant. I think the fact that he was completely defended and indemnified for anything that may have happened out at the project by American family's insurance means that he was not harmed at all. Now, if he came – if the declaration said, I paid out of pocket, this thing – this cost me money, this is a harm. The harm that – well, first of all, there is no harm stated, and we make it clear that the declaration doesn't say I was harmed at all. Or there's any detriment. It simply says I wouldn't have let him work. It seems to me to be beyond the record to read into the few paragraphs in the declaration that relate to this an assumption that there was harm when the obligation would have been to come forward with evidence saying there was harm. Okay. Now you want to turn to the mailbox rule. Yeah. The mailbox rule, which is the big picture here, I really wanted to talk about in two pieces. And the first piece I want to talk about is the fact that the mailbox rule shouldn't be applied to insurance at all. You'll note in the briefs and in the arguments, there's not one case that's been cited to you that talks about the mailbox rule and insurance policies. And there's a reason for that. The reason is, is that the insurance policies require notice in a certain way, a way that is inconsistent with the mailbox rule.  And the reason for that is because, first of all, there's already a mechanism for notice provided. There's already a mechanism for notice provided for in the contract that the parties enter, which I would say preempts any sort of use of a common law mailbox rule. And second, the nature of the insurance relationship itself is inconsistent with this idea of presumed notice. I would ask the Court to take a look closely at the cases from the Ninth Circuit that talk about use of the mailbox rule in other contexts. And the Vasek case is from the Ninth Circuit. Are you talking about the post office case? No, that's the Shakur case, I believe. Okay. The Vasek case is the – no, I apologize. That is the post office case. Yeah. The one I descended from? Yes. I remember it well. And then the second – and the second case would be the Shakur case. And in those cases, the Court looked at the specific statutory regime that was in place for the notice that needed to be given. And I also cite to the State v. Lee case. And in all those cases, they said this is the rule for notice. And in some of them, they said, well, the legislature has prescribed a specific way of notice. We're not going to second-guess what the legislature did. We're just going to say this is the way that notice needs to be. And some cases said, well, the way that it's specified, the mailbox rule can't be used. And it's the way sometimes when it's not specified, the mailbox rule can be used. And I think in this case here, the Court should refer to the record in the policy which says you need to see to it that we receive written notice of the claim. I disagree with American Families' assertion that the policy doesn't say how notice needs to be given. It very specifically says as a condition of coverage, you need to see to it that we receive written notice of the claim. And seeing to it isn't dropping it in a mailbox and forgetting about it, as the Court has already noted. There's many ways to see to it that a letter is delivered, like certified mail or a follow-up call or letter saying, hey, did you get my tender and can I get a response to it? None of that occurred in this case. And part of that reason that this is so important is the purpose of this insurance. If you'll notice under Arizona law, a valid tender requires the imparting of information. A tender is only valid and can only occur if the insured puts the insurer on notice of a claim that is potentially covered and asks to be defended. That's what's required for a valid tender. You can't get that with an evidentiary presumption. The insurers, and in many other insurance cases, which again, big picture sort of beyond the scope of this, many other insurance cases, the courts have uniformly held that this duty to defend is prophylactic and you need to defend all claims if one is covered and it's held in very high regard, this duty to defend. The insurer must jump out immediately and start defending. But it can't do any of these things if it doesn't know that the insured needs help. The insured is tendering its claim. That's why the policy specifically require notice, not an evidentiary presumption that maybe something was done. It's actual notice of the claim. So to a certain extent, but in this case, there's more than just the testimony that I think I've held. There is a pretty strong evidence of custom and practice with respect to this particular claim. I mean, it's more than just I know I've mailed it. Because we know that other letters, tender letters were mailed coming off the same macro, if you will, and that other companies received it. So it's a little stronger than the usual claim. I would take issue with the Court's reading of the record in that way because I don't think the record can be read that way. The mere fact that some insurers eventually got a copy of that letter isn't evidence that those 60 CCs were ever sent out. If you'll notice in the record, originally there were five insurers that were part of this appeal. Five different insurers submitted claims saying we never got tender letters. One of those was for Northbrook, and they insured William and Sinatra. And if you look in the record, I believe it's 44 in there. There's a declaration of them saying from different and variety of sources that say none of the nine or eight letters that were allegedly sent to the insurers of William and Sinatra ever were received. No, I understand that. I guess the reason I mention that is because we're on summary judgment and we construe the facts in the light most favorable to the nonmoving party, that they have more than just the typical, well, I know I put it in the mail. Well, if the mailbox rule applies at all, there certainly is a level that is required and it's direct and direct actual evidence of mailing, addressing, stamping and putting in the U.S. mail. Then you get the presumption that the U.S. mail works and it was delivered to the addressee. I believe that the American family has misread the Arizona cases on that, specifically State v. Mays. In that case, the Court says the rule is direct evidence, and that's how you get to the presumption of the mailbox rule. We'll look at other evidence with respect to delivery and corroborating evidence and those things, but that's not the mailbox rule. That's something else. And there hasn't been an argument here that there's something else in play. It's simply an argument that the mailbox rule should have applied in this case. And I think a better representation of Arizona law is the Goodman case, and that's a case that was decided right after the Mays case. And in that case, the Court of Appeals recognized that there's a minority of jurisdictions that will allow less than direct proof of stamping, addressing, and mailing to be – sorry, I see my time is up. If I can just finish that. Go ahead. Direct evidence of mailing. Some other states will allow that. Kansas is one of those states that's been cited by American family in its brief about a state that will allow the use of the mailbox rule with less than that direct evidence. But in Arizona, they rejected that rule. That's the minority rule. And Arizona accepted the majority rule, which is direct proof only gets you to the mailbox rule. Thank you. Thank you. We've got three minutes on the clock. I think that was the time when we were hearing the otherworldly sounds. Thank you. It's just an insurance case. I don't know where those sounds came from. Your Honor, I want to talk first. I guess I'll just go in order with the estoppel argument and some points I wanted to make. With regard to the certificate of insurance and the right to rely on the certificate of insurance, Mr. Barrett stated that a certificate of insurance is just to tell the certificate holder that there was a contract between the named insured and the insurance company. I would submit that this case is different. And that's because on the certificate of insurance, GFTDC was not just listed as a certificate holder. On the certificate, there's a spot for someone who just has a certificate. And there's also a spot that states the certificate holder is also an additional insured. On the owner's certificate of insurance, it states explicitly that GFTDC was an additional insured. And it does represent that there is a contract between owners and GFTDC as an additional insured. And that's the key difference in this case. Let's presume that there was absolutely no policy of insurance at all, that the certificate was just fictitious. Would that be sufficient to create a tribal issue fact on estoppel against the insurer? Yes, it would. If the agent had the authority to issue the certificate of insurance, absolutely, because it goes to the fact, the representation that the policy itself was issued. And the critical is that there's an agency relationship. Yes. And I believe Judge Wake did find that there was sufficient evidence presented based on the agency. My question, if there was a representation that there was a policy and there was no policy at all, then how would you know what the policy is? I mean, how would you know what the terms were? Well, that's where you would have to get into testimony, the insurance broker and the insured as to what policy was requested, what forms were available. There would have to be evidence from which the trier of fact would have to determine what policy would have been issued had one been issued. I see. And there should be. Standard terms. There could be course of dealing. There could have been a policy the year before that was renewed. It's all sorts of factual scenarios that we didn't get to in this case because we didn't go over the initial hurdle of whether GFDDC was an additional insured on this contract. Okay. Mailbox rule. Mailbox rule. Boy, there's no case in Arizona that expressly says the mailbox rule applies to insurance cases, but there certainly isn't a rule, a case that says it does not. It's a common law rule that applies to a variety of situations. Goodman's comes a little close to it, don't you think? A little bit, but not so much. Remember that Goodman's is also an Arizona Court of Appeals case. Right. We have Arizona Supreme Court cases that are directly on point and very explicit that where actual receipt is required either by the statute. The notice of claim statute in Arizona was at issue in State v. Lee. There was a contractual option in a real estate lease at issue in the Andrews case. Both of those situations required actual receipt, and the Arizona Supreme Court very expressly stated, we reject the notion that there has to be direct evidence of actual receipt. The mailbox delivery rule satisfies that requirement and is compatible with those requirements. These insurance policies don't create any different type of rule than the notice of claim statute in Arizona or this contract that was at issue in the Andrews case. Well, you have to look at the context, I think, too. I mean, the cases we've had, the post office case, which I guess I did a concurrence and not a dissent, but that was the context of the Federal Tort Claims Act. We have a tax case that allows a mailbox rule, and that's the context of the tax statute. The context of insurance law, you're not trying to preserve the statute of limitations, as you would be in those cases, or file within it. So you're trying to put somebody on notice so they can take action. So why should the mailbox rule apply when there just is no evidence of actual receipt in the insurance context? Well, I guess that we've become circular now because the mail delivery rule does, is evidence of receipt because of that strong presumption that if you put something in the mail, it's received. And the cases all talk about, you know, it's so easy for the recipient to say, I didn't get it. Right. And that's not sufficient to defeat that strong presumption that if you put it in the mailbox, it's going to reach the addressee. And so that's one problem. The Lee v. State case actually addresses, I think, what some of the concerns were, that the insurance company, if they don't acknowledge or somehow get that letter to the right file, they didn't have an opportunity to act, to investigate, to defend the insured. The Arizona Supreme Court in the Lee case faced that very similar issue. That was a notice of claim statute, which is very similar to, you know, what you have with the Federal Tort Claim Act that requires some sort of pre-suit notification of the claim by a certain deadline. The Arizona statute at issue in State, Lee v. State, is very similar. And it also uses language that says you have to file the claim with the appropriate agency, which, you know, seems like that would require you have some sort of receipt or something to show that you filed it. The Court said, no, you can put it in the mail, and that presumption is going to apply. The Court said that the purpose of that statute is to give the State or the State agency an opportunity to investigate the claim, to preserve evidence, to potentially settle that claim before suit. All similar goals that are the purpose of, you know, giving notice of a suit to an insurance company and tendering the defense. And the Court said, you know, that's really not a consideration here because of the fact that the agency could have misplaced the letter or not gotten it to the appropriate person. The point being that, you know, letters could be received by an agency or by an insurance company and misplaced, and the burden of that shouldn't be on either the claimant or the insured. The burden of that is on the organization. That's to receive and properly process those notices. Roberts. Okay. Thank you, counsel. Thank you both for your arguments. Thanks for coming here from Arizona for us. Sorry for the technical interruption. Indication of approval will be submitted for decision. It will be in recess for the morning.
judges: Restani, Hall, Thomas